UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| J & J Sports Productions, Inc., ) | |
| ) | C/A No.: 3:11-cv-02807-CMC |
| Plaintiff, ) | |
| ) | |
| -vs- ) | **OPINION AND ORDER** |
| ) | **ON MOTION FOR DAMAGES** |
| Pure Lounge of Columbia, LLC d/b/a Pure ) | **AND ENTRY OF JUDGMENT** |
| Ultra Lounge and Stephen L. Davis, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiff, J & J Sports Productions, Inc. ("Plaintiff"), held exclusive, nationwide commercial television distribution rights to *The Floyd Mayweather, Jr. v. Shane Mosley, Welterweight Championship Fight Program*, ("the Program"). Plaintiff sued Pure Lounge of Columbia, LLC d/b/a Pure Ultra Lounge ("Pure"), and its principal, Stephen L. Davis ("Davis") (collectively "Defendants") for exhibiting the May 1, 2010, commercial broadcast of the Program, which included under-card bouts and commentary, without paying the required licensing fee to Plaintiff. Plaintiff's Complaint included causes of action brought pursuant to 47 U.S.C. § 605 ("Communications Act") and 47 U.S.C. § 553 ("Cable & Television Consumer Protection and Competition Act"), as well as a state law claim for conversion. Although Defendants were properly served with the Complaint, they failed to answer or file any responsive pleading. Pursuant to Plaintiff's request, the Clerk of Court entered default against Defendants, and Plaintiff then moved for a default judgment and award of attorneys' fees and other costs.

I.  **Introduction**

Plaintiff filed this action against Defendants on October 17, 2011, seeking an award of statutory damages, enhanced damages, attorneys' fees and costs, as well as compensatory and

punitive damages based on the unlicensed broadcast of the Program.

### A.   Jurisdiction and Venue

The court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1367. The court has personal jurisdiction over Defendants, and venue in this district is proper pursuant to 28 U.S.C. § 1391 because Davis is a South Carolina resident and Pure is a South Carolina corporation, which conducts, or conducted, business in this district, and because the alleged wrongful acts occurred in this district.

### B.   Process and Service

On November 9, 2011, Plaintiff's private process server served Pure, by serving its registered agent, and served Davis personally on November 8, 2011.

### C.   Grounds for Entry of Default

Neither Pure nor Davis timely filed an answer or other pleading, as reflected by the Affidavit of Default and the Affidavit of Plaintiff's Counsel in Support of Request for Entry of Default filed on December 6, 2011. Dkt. No. 8. The Clerk of Court properly entered default as to Defendants on December 6, 2011. Dkt. No. 9. On December 23, 2011, Plaintiff filed a Notice of Motion and Motion for Default Judgment, a copy of which it timely served on Defendants by mail. Dkt. No. 11. Defendants failed to respond to Plaintiff's motion, leaving Plaintiff's proffered evidence uncontroverted and its arguments unopposed.

## II.   Findings of Fact

Having reviewed Plaintiff's Complaint, Answers to Local Rule 26.01 Interrogatories, Request for Entry of Default, Motion for Default Judgment, as well as all supporting and supplemental information provided, the court accepts Plaintiff's well-pleaded factual allegations as

true and makes the following factual findings. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.1 (4th Cir. 2009) (accepting plaintiff's allegations against defaulting defendant as true, noting a defaulting defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (quoting *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001)).

Plaintiff is a California corporation with its principal place of business in Campbell, California. Pure is a South Carolina corporation that does (or did) conduct business as Pure Ultra Lounge at 14 Berryhill Road, Columbia, South Carolina. Davis resides in Irmo, South Carolina.

Relevant to this litigation, Plaintiff paid for, and was granted the exclusive nationwide commercial television distribution rights to the Program. Plaintiff contracted with and granted certain businesses rights to exhibit publicly the Program to customers within their commercial establishments. Plaintiff expended substantial money in marketing, advertising, administering and transmitting the Program to such businesses.

Defendants charged patrons a $20.00 cover charge on the night of the broadcast of the Program. No evidence has been proffered as to whether Defendants charged a cover charge on other nights. It may, nonetheless, fairly be assumed that the cover charge was, at least in part, intended to compensate Defendants for whatever entertainment was offered on a given day.

III.    Analysis

Having found the facts set forth in Plaintiff's Complaint deemed admitted by default, the court must ensure the Complaint sets forth a proper claim before entering default judgment. *See GlobalSanta Fe Corp. v. Globalsantafe.com*, 250 F.Supp.2d 610, 612 n.3 (E.D. Va. 2003) (considering facts and evaluating Plaintiff's claims prior to entry of default judgment in copyright action). The court considers whether Plaintiff has set forth claims for which relief can be granted

3

pursuant to the standard of Fed. R. Civ. P. 12(b)(6).

    A.    <u>Election of Remedies</u>

In its Motion for Default Judgment and accompanying Memorandum, Plaintiff submits that it has established liability pursuant to 47 U.S.C. § 605 and 47 U.S.C. § 553. These two statutory schemes provide relief for the alternate means by which the Program might have been received (satellite or cable). Given Defendants' default, the facts necessary to support liability under either section are admitted (though, logically, both cannot be true). Plaintiff has elected to proceed under 47 U.S.C. § 605, which offers the more generous remedial scheme. Given the admissions by virtue of default, this election is appropriate and factually supported.[1]

Statutory damages under 47 U.S.C. § 605 range from $1,000 to $10,000 for each violation with a $100,000 maximum enhancement for willfulness, while statutory damages under 47 U.S.C. § 553 range from $250 to $10,000 for all violations with a $50,000 maximum enhancement for willfulness. 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii); 47 U.S.C. §§ 553(c)(3)(A)(ii) and 553(c)(3)(B).

The differences in available damages are, however, of little significance for purposes of this action as the court awards damages within the ranges available under either section and would award the same amount even had Plaintiff elected to proceed under 47 U.S.C. § 553. *See Columbia Cable TV Co., Inc. v. McCrary*, 954 F. Supp. 124, 128 (D.S.C. 1996) (noting that, even if 47 U.S.C. § 605 were applicable to cable theft, under facts of case, court would award damages "as close as

---

[1] In electing to pursue damages pursuant to 47 U.S.C. § 605, Plaintiff has conceded the split in authority as to the applicability of this section to pirated programming involving cable services–as opposed to satellite services–at the delivery point, and it has submitted that, without the benefit of discovery or an admission by Defendants, it is impossible to determine whether the Program was broadcast by cable or satellite signal.

permissible to the amount awarded under § 553").

Through its Motion for Default Judgment, Plaintiff asks the court to award damages under both 47 U.S.C. § 605 and the common law conversion claim. The court finds that an award under 47 U.S.C. § 605 is appropriate and that any additional award for the conversion claim (necessarily a significantly lower award with respect to actual damages) would be duplicative. The court, therefore, awards damages solely under 47 U.S.C. § 605.

B.     Liability under 47 U.S.C. § 605

The Communications Act prohibits the unauthorized reception, interception, publication, or divulgence of interstate radio or wire communications. *See* 47 U.S.C. § 605(a). Specifically, it provides, in pertinent part, that:

> . . . no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent or attorney. . . .

47 U.S.C. § 605(a). In short, Plaintiff must demonstrate that Defendants intercepted the Program's signals and "divulged" or aired it to commercial patrons.

In addition to the facts alleged in the complaint and established by virtue of Defendants' default, Plaintiff relies on an affidavit of a private investigator, who viewed the Program at Pure. This uncontroverted affidavit establishes that the Program was displayed at Pure on three television screens. Based on Defendants' default and the private investigator's affidavit, the court finds that Defendants violated 47 U.S.C. § 605(a).

C.     Damages under 47 U.S.C. § 605

The available penalties and remedies for violation of 47 U.S.C. § 605(a) include a private

civil action, as follows:

> (B) The court--
>
>> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
>>
>> (ii) may award damages as described in subparagraph (C); and
>>
>> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). Plaintiff seeks damages, attorneys' fees and costs.

1.     <u>Statutory Damages under 47 U.S.C. § 605</u>

The statute sets out the following available damages:

(C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses:

> (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

> (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section. . . .

47 U.S.C. § 605(e)(3)(C).

Plaintiff has elected to recover statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), rather than actual damages available under 47 U.S.C. § 605(e)(3)(C)(i)(I). As Plaintiff points out, actual damages are difficult to prove. Because of Defendants' default, Plaintiff has not been able to conduct discovery concerning, among other things, Defendants' profits from the broadcast of the Program. Plaintiff seeks $10,000.00 in statutory damages, which is the maximum available pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff argues that such damages are necessary to compensate Plaintiff for its injury and to deter similar acts.

According to the private investigator's affidavit, Pure has a capacity of approximately fifty people, and there were fifty patrons present during the Program. According to Plaintiff's Affidavit in Support of Motion for Default Judgment, the licensing fee Defendants would have had to pay to legally display the Program would have been $2,200 as reflected on Defendants' rate card for establishments with capacity from 0 to 50.

The court may award statutory damages between $1,000 to $10,000 in an amount "the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Nationwide, courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost of the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid

the plaintiff. Other courts award a flat amount for a violation. The Fourth Circuit has not addressed any of these methods. In prior similar cases, this court has awarded some multiple of the license fee which should have been paid.

The court concludes that an award of two times the license fee Defendants should have paid to legally broadcast the Program is an appropriate statutory damage award. The court, therefore, awards $4,400 in statutory damages. The court finds that this award is adequate both for purposes of compensation and deterrence when combined with the enhanced damages and attorneys' fees, discussed below.

2.  Enhancement of Statutory Damages under 47 U.S.C. § 605

The statute permits the court, in its discretion, to increase damages by up to $100,000 per violation when the violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff argues that Defendants willfully violated 47 U.S.C. § 605(a) for financial gain and seeks enhanced damages of $100,000, asserting that Pure and Davis intentionally intercepted and showed the Program for financial gain or commercial advantage. With respect to financial gain, Plaintiff notes that Pure received a per-patron cover charge of $20.00 on the night of the Program's broadcast. Plaintiff also argues that Davis directly or indirectly committed wrongful acts and, consequently, cannot hide behind a corporate shield.

The claim of willfulness is supported by factual allegations which are admitted by virtue of Defendants' default. They are also supported by Plaintiff's Affidavit in Support of Plaintiff's Motion for Default Judgment, which includes uncontroverted statements of fact supporting the conclusion that the Program could not have been "mistakenly, innocently or accidentally intercepted."

The court finds that Defendants' violations were intentional and willful and resulted in financial gain to the Defendants. The court further concludes that a significant award is necessary to deter future violations. The court, nonetheless, declines to award the maximum statutory enhanced damages and, instead, awards enhanced damages in the amount of $8,800 (four times the license fee).[2] The court finds this amount appropriate punishment for the willfulness of the violation. Combined with the statutory damage award discussed above and attorneys' fees and costs discussed below, the total award is sufficient to serve the purposes of compensation, deterrence and punishment.

In sum, the court awards statutory and enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C) in the aggregate amount of $13,200 ($4,400 plus $8,800).

IV.     Attorneys' Fees and Costs under 47 U.S.C. § 605

The Communications Act requires that the court award "full costs, including reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). As the rightful owner of the Program broadcast rights, Plaintiff is an aggrieved party which has prevailed.

1.     Request for Costs

Plaintiff has submitted affidavits of its South Carolina counsel and its California counsel in support of its request for costs. The costs include the filing fee, payments for investigative services, service of process and other miscellaneous expenses . The court finds the costs reasonable and awards costs in the amount of $1,070.63

---

[2] In a prior similar case, the court awarded similar statutory damages (twice the license fee) but lower enhanced damages (three times the license fee). *See J&J Sports v. Maria Leon*, C.A. No. 3:10-cv-2703-CMC. Here, the court finds greater enhanced damages appropriate (four times the license fee) because those in attendance paid a substantial cover charge.

    2.      Request for Attorneys' Fees

The "full costs" to be awarded to a prevailing party pursuant to 47 U.S.C. § 605(e) include reasonable attorneys' fees. In support of its request for attorneys' fees, Plaintiff submitted the Declarations of its South Carolina counsel and its California counsel.

In this default matter, no one has appeared to challenge the attorneys' fees Plaintiff seeks. Nonetheless, in determining what constitutes a reasonable number of hours and the appropriate hourly rates (*i.e.*, in calculating the lodestar fee), the court has considered the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney(s); (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awarded in similar cases. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978). Although the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *E.E.O.C. v. Servo News Co.,* 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895

(1984)). Further, this court's Local Rule 54.02(A) provides that attorneys' fee petitions must comply with Barber "and shall state any exceptional circumstances and the ability of the party to pay the fee." Local Rule 54.02(A) (D.S.C.).

The information Plaintiff provided, coupled with the court's knowledge of rates in work of this type in this district, support an attorneys' fee in the amount of $1,805. This includes $1,160 for work by Plaintiff's local counsel, and $645 for work by Plaintiff's out-of-state attorneys and paralegal.[3] Based on the information and supporting documents before the court at this time, the court concludes that the judgment against Defendants should include an award of costs and attorneys' fees in the amount of $2,875.63 ($1,070.63 costs plus $1,805 attorneys' fees).

WHEREFORE, it is

ORDERED that Defendants be found liable for willful violation of 47 U.S.C. § 605 and that a judgment in favor of Plaintiff be entered against Defendants, jointly and severally, in the amount of $13,200.00 in statutory and enhanced damages plus $2,875.63 in attorneys' fees and costs. Thus, the total judgment is $16,075.63.

IT IS SO ORDERED.

                                                              s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 25, 2012

---

[3] The court declines to award fees for work by an administrative assistant.